UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:  CHRISTINA OTTINGER FOX | BANKRUPTCY CASE NO.: 25-13800-djb |
| Debtor | CHAPTER 11 |

### RESPONSE OF WILMINGTON SAVINGS FUND SOCIETY TO MOTION OF DEBTOR FOR EXTENSION OF TIME TO FILE SCHEDULES AND STATEMENTS

Wilmington Savings Fund Society, by and through its undersigned counsel, Weber Gallagher, hereby responds to the Motion of the Debtor for an Extension of Time to File Schedules and Statements and in support thereof states as follows:

1. By way of brief background, on or about June 18, 2021, Plaintiff loaned the Debtor and her husband, Joseph Fox, the principal sum of $2,775,000 in accordance with the terms and conditions of a certain Note of even date executed by Debtor and Mr. Fox in favor of WSFS (the "Note").

2. The Note is secured by a Mortgage executed by Debtor and Mr. Fox granting Mortgage Electronic Registration Systems, Inc., as nominee for WSFS ("MERS"), a mortgage lien on real estate located at 38 Harrison Dr., Newtown Square, PA 19073 (the "Property"). The Mortgage was recorded on July 17, 2021 with the Delaware County Recorder of Deeds in Book 6716, Page 4105.

3. The Mortgage was assigned by MERS to WSFS. The Assignment of Mortgage was recorded on April 23, 2024 with the Delaware County Recorder of Deeds in book 6970, Page 1535.

4. The Debtor and Mr. Fox have made no payments under the Note since November 1, 2023, nearly 2 years ago.

5. On or about May 15, 2024, WSFS filed its Complaint in mortgage foreclosure in Delaware County, captioned <u>Wilmington Savings Fund Society v. Joseph L Fox, Christina Fox</u> et al., Delaware County Court of Common Pleas, Case No. CV-2024-004313.

6. After opposition by the Borrowers, WSFS obtained an in rem judgment against Mr. Fox and the Debtor in the amount of $2,761,500.45 plus per diem interest from and after October 8, 2024 at $285.82 per day.

7. After entry of the judgment, Mr. Fox and the Debtor engaged a different attorney who filed a Motion for Reconsideration which was denied by the Delaware County Court.

8. Thereafter, Mr. Fox and the Debtor filed an appeal to the Pennsylvania Superior Court which was quashed by that court.

9. After Ms. Fox filed her second eve-of-foreclosure bankruptcy (which is the present case), or her counsel filed a Motion to extend the automatic stay pursuant to 11 U.S.C. §362(c)(3)(B) (the "Stay Extension Motion"). A hearing on that Motion is scheduled for October 14, 2025. Upon information and belief, there is no deadline to respond to that Motion. Debtor's counsel asked if the undersigned would consent to expedited consideration of the Stay Extension Motion, and the undersigned indicated that said consent would be given.

10. While WSFS does not oppose an extension of time in which to file the Schedules, statements and other documents required by this Court's September 19, 2025 Order, it is requesting that the extension be to October 12, rather than the October 16 date now being requested pursuant to the Motion, for the following reasons:

    a. As a threshold matter, it is questionable this will be a complicated case with too many moving parts. It appears from the Stay Extension Motion that Ms. Fox is a

2

   "non-employed spouse" and it is not known at this stage which debts of Mr. Fox are also in the name of the Debtor. It certainly appears from the Stay Relief Motion that Joseph Fox is the one who is involved with all financial aspects of the relationship, and not the Debtor.

b.  On September 19, 2025, the undersigned asked attorney Vagnoni whether his firm had determined the game plan for the Debtor going forward. Attorney Vagnoni responded that "we are still working out the details with our client but we intend to have a discussion with you before implementing our game plan." To date, that game plan has not been shared with the undersigned.

c.  The reason that the foregoing is relevant is in part because, the more information that we have regarding important information such as (1) the Debtor's Schedules and Statements and all other documents required by this Court's Order, as well as (2) the Debtor's game plan going forward, it is possible that WSFS consent to the Stay Extension Motion. Indeed, it is theoretically possible, depending on the direction that Debtor's counsel chooses to take this case, that it could be consensual altogether.

d.  The reason we have concern about this however is because the last time that the undersigned represented a secured creditor against a debtor represented by Mr. George and his team, he embarked on a scorched earth strategy, filing a frivolous lawsuit against the secured creditor and the loan servicer, which was 356 paragraphs long, and 52 pages long. See <u>Lewisberry Partners v. U.S. Bank,</u> et al. Case No. 21-00052-elf. This was followed by <u>four</u> total cramdown plans, all of which were unconfirmable and all of which were flatly rejected by the Honorable Eric Frank. The end result was that the Debtor dismissed its lawsuit against the

3

       lender and loan servicer and Judge Frank ordered that the legal fees of the undersigned, in excess of $200,000, were the responsibility of the Debtor. See the Opinion issued by Judge Frank in <u>In re Lewisberry Partners</u>, 2022 WL 2398694 (Bankr. E.D.Pa. 2022), among other opinions issued in that case. In other words, it appeared that Debtor's counsel in that case was simply not interested in any type of consensual arrangement, which is why the legal fees of the undersigned in combating the lawsuit and all of the cramdown efforts were over $200,000 (and are far greater than that in that case now, even though the Obermayer firm is no longer representing the Debtor in that case). Since Mr. George also represents the Debtor here, we are concerned that he may engage in the same scorched-earth tactics in this case. We hope of course that that is not the case, which is one of the reasons we inquired early on as to Debtor's counsel's intention in this case.

e.     The new date that the Debtor is now requesting to file its Schedules and Statements, namely October 16, is two days <u>after</u> the scheduled hearing on the Stay Extension Motion, which is October 14. While the Debtor or its counsel cannot of course be compelled to disclose their game plan before that time, WSFS should be at least given the opportunity to review the Debtor's Schedules and Statements before that hearing to get a fuller picture of the Debtor's situation so that it is not responding to the Stay Extension Motion with one hand tied behind its back.

f.     Moreover, as noted, the Debtor and her counsel still have <u>nearly 3 additional weeks</u> not only in which to disclose to the undersigned whether they intend for this to be consensual process or whether they intend to follow the type of hostile path that they followed in the Lewisberry matter, as well as nearly 3 additional

4

      weeks in which to file the Schedules and Statements, even if that date is October 12, as WSFS is now requesting.

g.     There is no material difference between submitting the Schedules and Statements a day or two before the scheduled October 14 hearing on the Stay Extension Motion versus a day or two after, especially since that hearing is about three weeks away anyway.

WHEREFORE, for all of the foregoing reasons, WSFS does not oppose the relief sought with respect to the present Motion with the caveat that the extension should be granted until October 12, 2025 rather than October 16, 2025.

                                      **WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY, LLP**

                                      By:   */s/Peter E. Meltzer*
                                              Peter E. Meltzer, Esquire
                                              Counsel for WSFS