**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| CHRISTINA OTTINGER FOX, | : | Case No. 25-13800-DJB |
| Debtor. | : | |

**OBJECTION OF TROJAN PARTNERS, LP TO**
**FIRST AMENDED PLAN OF REORGANIZATION OF CHRISTINA FOX**

Trojan Partners, LP ("Plaintiff" or "Trojan"), by and through its undersigned counsel, hereby files this objection to the *First Amended Plan of Reorganization of Christina Fox* (ECF No. 96, the "Plan"), and in support hereof respectfully states as follows:

**Preliminary Statement**

1. Trojan, holder of secured claim 3-1 as filed on the claims register for this bankruptcy case, and sole member of Class 4 of the Plan as proposed by debtor Christina Ottinger Fox ("Debtor"), respectfully contends that confirmation of the Plan would be inappropriate under Title 11 of the United States Code ("Bankruptcy Code") and should be denied on the following grounds:

A. the Plan has not been proposed in good faith, but rather reflects the continuation of a deceptive course of conduct, as detailed in the accompanying *Certification of Jim Riggs, Managing Partner of Trojan Partners, LP in Support of Objection to First Amended Plan of Reorganization of Christina Fox* ("Riggs Cert.") that has injured Trojan by, at a minimum, depriving Trojan of a second-priority lien on its collateral, the Primary Residence (as defined in the Plan);

B. the Plan is not feasible as it relies on a non-debtor funding source, the Debtor's husband, Joseph L. Fox ("Mr. Fox"), absent any showing that such future funding will be steady and reliable; and

C. the Plan impermissibly seeks to discharge (strip) Trojan's lien over the Primary Residence despite (a) no proper proceeding having been commenced to determine the priority or extent of Trojan's lien; (b) the anti-modification provisions of Bankruptcy Code section 1123(b)(5) being applicable to Trojan's lien on the Primary Residence; (c) no proper valuation of the Primary Residence having been shown by the Debtor or otherwise placed on the record; and (d) the inequitable windfall that would accrue to Mr. Fox, who upon information and belief is also both a co-owner of the Primary Residence and a counterparty to Trojan's Note and Mortgage.[1]

**Relevant Background & Procedural History**

2. The Debtor's instant bankruptcy proceeding was commenced by way of a Chapter 11 bankruptcy petition filed on September 18, 2025. Bankr. E.D.Pa. Bky. No. 25-13800-DJB.

3. Trojan is a secured creditor of the Debtor and Mr. Fox through a Note and Mortgage made on December 28, 2022, on account of a principal sum of four hundred thousand dollars ($400,000.00). Trojan's recorded mortgage, together with materials supporting Trojan's total claim in the amount of $1,404,199.00 (inclusive of interest, late fees, and other contractual damages), were previously submitted by way of Trojan's proof of claim as filed on October 23, 2025. *See* Claim 3-1.

---

[1] Specifically in this regard, for the avoidance of confusion, and discussed elsewhere herein, Trojan notes that the Plan refers to stripping "the liens of Trojan not the Debtor's interest in the Primary Residence," *see* Plan at 22-23, however the actual resulting impact on the entirety of Trojan's lien is not made clear given the Debtor's related assertions that the Primary Residence is owned by the Debtor and Mr. Fox through tenancy by the entirety.

4. The Debtor's original *Plan of Reorganization* and accompanying *Disclosure Statement* were filed on July 15, 2026. ECF Nos. 86-87. The currently pending Plan together with an *Amended Disclosure Statement* ("Disclosure Statement") were filed by the Debtor on August 3, 2026. ECF Nos. 96-97.

5. The Disclosure Statement was approved by way of the Court's *Order* of August 18, 2026, which also fixed deadlines for voting and objecting to the Plan, and set a confirmation hearing for September 29, 2026 at 1:00 p.m.

6. As a secured claim, the Plan separately classifies Trojan's claim in Class 4. *See* Plan at 15-16. The Plan proposes to pay Trojan $5,000.00 on account of its claim, to which Trojan objects. In addition, the Plan proposes that Trojan's lien on the Debtor's real property shall be discharged, *see id.,* to which Trojan also objects.

7. As a critical aspect of the Plan, the tax lien held by the Internal Revenue Service ("IRS") is placed in second-priority above Trojan's third-priority secured claim. Plan at 15. With respect to the IRS and without any inference of wrongful conduct by same, Trojan respectfully reserves all rights and remedies in connection with its rights relative to the subject real property, as defined the "Primary Residence" located at 38 Harrison Drive, Newtown Square, Pennsylvania 19073. *Id.* at 6. Trojan asserts that the Mortgage and Note were obtained by the Debtor and Mr. Fox through false representations or otherwise deceptive conduct, and therefore previously commenced an adversary case against the Debtor and Mr. Fox on October 20, 2025, whereby Trojan sought, *inter alia,* a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A). *See Trojan Partners, LP v. Fox, et al.,* Adv. Pro. No. 25-00220-DJB.

8. Other aspects of the Plan are specifically addressed below in connection with their respective objecting grounds.

9. Trojan's above-referenced adversary case was dismissed by Order entered on June 3, 2026, however Trojan respectfully contends that claims and arguments thereby raised on its behalf remain open and relevant for purposes of considering whether the Plan should be confirmed. Accordingly, the history between the Debtor, her non-debtor spouse Mr. Fox and Trojan are more fully detailed in the Riggs Cert., and as further addressed below in connection with Trojan's contention that the Plan has not been submitted in good faith.

10. Together with the submission of this objection Trojan has also submitted "no" votes on the Plan as both the sole member of Class 4, as well as a potentially unsecured Class 5 creditor. Certain reservations of rights were set forth in the Class 5 ballot.

**Grounds for Objection**

**A. The Plan has not been proposed in good faith.**

11. Under Bankruptcy Code section 1129(a)(3), a "court shall confirm a plan only if . . . [t]he plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The United States Court of Appeals for the Third Circuit has explained that "[a] plan is proposed in good faith only if it will 'fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'" *In re American Capital Equipment, LLC,* 688 F.3d 145, 156 (3d Cir. 2012) (citing *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 247 (3d Cir. 2004)).

12. Within the Chapter 11 context, two recognized objectives include "preserving going concerns and maximizing property available to satisfy creditors[.]" *Id.* at 156-57 (internal citations omitted). "More generally, the Bankruptcy Code's objectives include: "giving debtors a fresh start in life," "discourag[ing] debtor misconduct," "the expeditious liquidation and distribution of the bankruptcy estate to its creditors," and achieving fundamental fairness and justice." *Id.* at 157 (internal citations omitted).

13. Here, this bankruptcy is a sham. The debts as outlined in the amended plan are mainly the debts of non-debtor spouse Mr. Fox. This will not provide the debtor with a fresh start as the debts incurred were mainly incurred by the non-debtor spouse or at a minimum jointly.

14. Moreover, as explained more fully below, the plan is being funded by the non-debtor spouse.

15. The sole reason the non-debtor spouse is not included in this bankruptcy is because he is prohibited from doing so.

16. Therefore, the debtor is attempting to work around this prohibition by filing her own bankruptcy, then funding it with funds from the non-debtor spouse Mr. Fox.

17. As shown by the Riggs Cert., the non-debtor spouse misrepresented his financials to Trojan in obtaining the mortgage signed by the Foxes. *See* Riggs Cert. para. 6.

18. The purpose of the loan was to provide short term funds as the non-debtor spouse, Mr. Fox was waiting for a couple of projects to close. *Id.* at para. 5.

19. Prior to the disbursement of the Loan, non-debtor spouse Mr. Fox requested Trojan not record the Mortgage unless or until a default occurred six months later. *Id.* at 7.

20. Again, immediately after the execution of the Mortgage and Note, non-debtor spouse Mr. Fox emailed Trojan confirming that the Mortgage would not be recorded until after June 30, 2023. *Id.* at 8.

21. Non-debtor spouse, Mr. Fox, stated he did not want a Mortgage showing on the Foxes' property because he intended using a future loan on the property to payoff Trojan's Mortgage. *Id.* at 9.

22. Trojan had no reason to believe there was any motive for the Foxes dishonesty as the non-debtor spouse, Joseph L. Fox, was a client for real estate transactions with the brother of the Manager of Trojan who made the introduction for the loan. *Id.* at 10.

23. Prior to approving and funding the Loan, Trojan required and received written financial statements prepared, submitted, and relied upon as reflecting Joseph and Christina's true financial condition. Those written financial statements were materially false, in that they affirmatively understated liabilities and overstated net worth by failing to disclose existing federal tax liabilities and imminent IRS enforcement activity, despite the Foxes knowing or believed to have known that such liabilities existed and were substantial. *Id.* at 11.

24. The written financial statements submitted to Trojan by the Foxes portrayed the Foxes as solvent and capable of repaying the Loan from anticipated project proceeds, when in fact the Foxes were already subject to significant unpaid federal tax obligations that materially impaired their financial condition and rendered the statements misleading as to their true net worth. *Id.* at 12.

25. The Foxes knew, or were reckless in not knowing, that the written financial statements submitted to Trojan were materially false at the time they were provided, and she authorized, adopted, and benefited from the submission of those statements in connection with the Loan, which they personally executed and from which directly benefited the Foxes. *Id.* at 12.

26. On May 22, 2023, a Federal Tax Lien was filed against the Foxes in the amount of $784,633.92. *Id.* at 13.

27. A few days later, on June 2, 2023, a second Federal Tax Lien was filed against the Foxes in the amount of $482,888.03. *Id.* at 14.

28. The tax liens were in the combined amount of $1,267,521.95.

29. These tax liens have now swelled to over 1.8 million dollars due to interest and penalties.

30. The Foxes lied about the reason for not recording the mortgage.

31. Due to Joseph and Christina's deceptive tactics, these two Federal Tax Liens jumped the priority against Trojan's mortgage.

32. If Trojan had not relied on the representations made at the time of the execution of the mortgage, the mortgage would have been recorded prior to the IRS liens.

33. Trojan's mortgage would be second in priority.

34. The plan now seeks to pay Trojan $5,000.00 for a debt that is over $1.4 million.

35. This Plan was clearly not proposed in good faith.

**B. <u>The Plan is not feasible.</u>**

36. Under Bankruptcy Code section 1129(a)(11), a "court shall confirm a plan only if . . . [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). As recently reiterated by this Court in denying confirmation, in part on grounds of feasibility, a debtor bears the burden of demonstrating a plan's feasibility. *In re Biz As Usual, LLC,* 627 B.R. 122, 131 (Bankr. E.D.Pa. 2021) (in part holding that proposed Chapter 11 plan whose success was dependent both on debtor's success in disallowing or reducing creditor claims and on its ability to sell three parcels of real property was not feasible, and could not be confirmed).

37. The Third Circuit has explained that "[a]lthough § 1129(a)(11) does not require a plan's success to be guaranteed, the plan must nevertheless propose 'a realistic and workable framework[.]" *American Capital,* 688 F.3d 145 at 156. "In other words, the plan must be

'reasonably likely [to] succeed[ ] on its own terms without a need for further reorganization on the debtor's part.'" *Id.* (quoting *In re Applied Safety, Inc.,* 200 B.R. 576, 584 (Bankr. E.D.Pa. 1996)); *see also In re Quigley Co., Inc.,* 437 B.R. 102, 142 (Bankr. S.D.N.Y. 2010) (plan was not feasible where funding source was "speculative at best and visionary at worst").

38. In addition, this Court has observed that third-party funding sources can be problematic. In *In re Norwood,* this Court in part held that a bankruptcy plan in the Chapter 13 context, which relied on contributions from the debtor's relatives, did not meet the feasibility requirement given the absence of sufficient regularity and stability. 178 B.R. 683, 691 (1995). This Court explained that "[w]hile it is possible that contributions from close family members can be included by a debtor as income available for distribution under a Chapter 13 plan . . . it is incumbent on the debtor to satisfactorily establish that the contributions are sufficiently 'stable and regular to enable [the debtor] to make payments under a plan.'" *Id.* at 691 (internal citations omitted).

39. Specifically in the context of reliance upon contributions from a non-debtor spouse, within the Third Circuit, in *In re Buccolo* the United States Bankruptcy Court for the District of New Jersey denied confirmation where a debtor was completely reliant on her husband's income, and making matters worse the husband's income was uncertain and seasonal in nature. 397 B.R. 527 (2008). As the court explained, "[c]ourts have also been skeptical of plans that rely on the income of a non-debtor to succeed[,]" and "[t]his is true even in cases where the non-debtor is a spouse that otherwise pools income with the debtor." *Id.* at 535.

40. Here, the Disclosure Statement concedes that "[t]he Debtor has no tangible income, but Joseph [Mr. Fox] will contribute such amounts as necessary to make all payments under the Plan." Disclosure Statement at 9. This reflects no real certainty of commitment towards the Plan,

and instead reflects an open-ended, illusory representation that has no place in Chapter 11 bankruptcy when a debtor is seeking to modify creditor rights in exchange for good faith, legally sound commitments.

41. In addition, the Disclosure Statement provides that "[t]he Funding Source for the Plan is Joseph," but even as to Mr. Fox it is conceded that funding will be provided "from time to time, from liquidity events in his business." Disclosure Statement at 19. Thus even if the Funding Source (Mr. Fox) were more firmly bound to honor his purported commitment to the Plan, feasibility is still not established given the uncertain nature of Mr. Fox's income.

42. Separately and in addition to these concerns, Trojan notes that the proposed payment terms for the first-priority lienholder (Class 1) appear to incorporate balloon payments, which further call into the question the viability of the Plan even apart from its treatment of Trojan. *See* Plan at 13-16.

43. Even as to basic administrative expenses associated with the Debtor's counsel, the Plan purports that same are "[t]o be paid from time to time from the Funding Sources described in the Plan as they become available." *Id.* at 11.

44. For these and other reasons, the Plan is not feasible and should not be confirmed.

**C. The Plan's discharge provisions, which seek to effect a windfall <u>to a non-debtor spouse, should not be granted</u>.**

45. As noted *supra* at 2 n. 1 hereof, Trojan recognizes that the Plan refers to stripping "the liens of Trojan on the Debtor's interest in the Primary Residence." *See* Plan at 22-23. Yet the Plan also asserts that the Debtor and Mr. Fox own the Primary Residence as "tenants by the entireties," *id.* at 17, and therefore the potential impact of the discharge provisions sought by the Debtor are at best unclear, and in any event should be denied for the reasons set forth herein.

46. First, the Debtor has not commenced an adversary proceeding to challenge the extent of Trojan's lien on the Primary Residence, as required by Bankruptcy Rule 7001(b). Fed. R. Bankr. P. 7001(b) (providing for adversary proceedings "to determine the validity, priority, or extent of a lien or other interest in property").

47. Second, the Debtor's attempts to impair Trojan's lien on the Principal Residence should be barred pursuant to the anti-modification provisions of Bankruptcy Code section 1123(b)(5), which provides that a Chapter 11 plan may not modify the rights of holders of secured claims that are secured only by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1123(b)(5).

48. Third, this Court has recognized that "[v]aluation of secured property may be critical for plan confirmation in determining whether a claim is impaired or whether a class is being treated fairly and equitably." *In re Lewisberry Partners, LLC,* 664 B.R. 398, 401 (Bankr. E.D.Pa. 2024). Whether a claim is secured or unsecured is addressed by Bankruptcy Code section 506(a), which provides that a secured creditor's claim is "a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a). Given that whether a claim is secured depends on the value of collateral property, "[f]or purposes of § 506(a), a valuation hearing may be necessary in order to determine whether a creditor is oversecured or undersecured and to what extent a claim might be bifurcated into separate secured and unsecured claims." *Id.* (internal citations omitted). Valuation standards may be flexible, and this Court has discretion in determining what valuation standard best applies to the facts. *Id.* Here, the Primary Residence is apparently being valued by the Debtor at $4.2 million, *see* Disclosure Statement at 28 (purported liquidation analysis), however Trojan is

unable to ascertain a basis or methodology underlying this bare assertion of value. Therefore, for example, there is no basis to approve the Debtor's assertion that the value of non-exempt property retained by the Debtor will only be $10,000.00. *See* Disclosure Statement at 19-20. In brief, it appears that no proper valuation of the Primary Residence has been undertaken.

49. Fourth, through these provisions of the Plan the Debtor apparently seeks to provide a windfall to Mr. Fox, to which Trojan objects on grounds that*, inter alia,* it should be permitted to maintain its lien on the Primary Residence no matter the appropriateness of the Plan given non-debtor Mr. Fox's co-ownership of same.

50. Moreover, a Chapter 11 debtor who owns property as tenants by the entirety with a non-debtor spouse cannot discharge the mortgage itself or eliminate the mortgagee's rights against the property or the non-debtor spouse. 11 U.S.C. §524(e).

51. While a confirmed Chapter 11 plan discharges the debtor's personal liability on the mortgage and note, the mortgage lien survives and passes through bankruptcy unaffected, and the non-debtor spouse's personal liability on the note is entirely unaffected by any discharge of the debtor. 11 U.S.C.A. §1141.

52. The Chapter 11 discharge has no effect on the non-debtor spouse's personal liability on the mortgage. 11 U.S.C. §524.

53. Moreover, the mortgage lien against the entirety's property itself survives the Chapter 11 discharge because the mortgage was executed by both spouses. *Deutsche Bank Nat. Tr. Co. v. Evans,* 421 B.R. 193 (W.D.Pa. 2009).

54. This joint lien was executed with the knowledge and consent of both spouses for their mutual benefit.

55. Therefore, the joint lien is not subject to the entireties exemption, and Trojan retains the right to foreclose against the entire property in rem even if the debtor receives a discharge. *In re Burkett,* 295 B.R. 776 (Bankr. W.D. Pa. 2003).

56. Trojan is entitled to an Order at minimum declaring that the mortgage as to non-debtor spouse Mr. Fox is intact and a valid lien against the Property.

**Conclusion**

57. WHEREFORE, based upon the foregoing, Trojan respectfully submits that the Plan should not be confirmed, and it further respectfully requests such relief as the Court may deem just and appropriate in aid of Trojan's secured claim 3-1 and proposed Class 4 stake.

Respectfully submitted,

Dated: September 22, 2026

ECKERT SEAMANS
CHERIN & MELLOTT, LLC

/s/______________________________

______________, Esq.
50 S 16th St.
22nd Floor
Philadelphia, PA 19102
P: 215.851.8400
F: 215.851.8383
*Attorneys for Trojan Partners, LP*