# Exhibit B

**DO NOT DETACH**

10194267-0016U

**Instrument Number: 2023023612**
**Volume/Page:** RECORD BK 6916 PG 4125
**Recorded Date: 07/11/2023 9:55:13 AM**

**Robert A. Auclair, Esq.**
Delaware County Recorder of Deeds
Government Center, Room 107
201 W. Front Street
Media, PA 19063
610-891-4152

**Transaction Number:** 973703
**Collected By:** pontem
**Document Type:** MORTGAGE
**Document Page Count:** : 11

**Return To (Simplifile):**
Surety Title Company
11 EVES DRIVE SUITE 150
MARLTON, NJ 08053

**Parcel ID:** 30-00-02462-05

**Fees:**

| | |
|---|---|
| RECORDING FEES: | $37.50 |
| AFFORDABLE HOUSING FEE: | $16.00 |
| COUNTY IMPROVEMENT FUND: | $5.00 |
| ACT 152 FEE: | $15.00 |
| JCS/ATJ FEE: | $40.25 |
| ADDITIONAL PAGE FEE: | $14.00 |
| ADDITIONAL PAGE FEE (AFF): | $14.00 |
| WRIT TAX: | $0.50 |
| **Total Fees:** | $142.25 |
| **Amount Paid:** | $142.25 |
| **Amount Due:** | $0.00 |

**Instrument Number:** 2023023612
**Volume/Page:** RECORD BK 6916 PG 4125
**Recorded Date:** 07/11/2023 9:55:13 AM

**OFFICIAL RECORDING COVER PAGE**

**DO NOT DETACH**

THIS PAGE IS NOW PART OF THIS RECORDED DOCUMENT
NOTE: If the document data differs from this cover sheet, please first check the document on our website to ensure it has been corrected. The document data always supersedes the cover page.
If an error on the cover page appears on our website after review please let our office know.
COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

After recording, please return to:

Damien O. Del Duca, Esquire
Del Duca Lewis & Berr, LLC
21 E. Euclid Avenue, Suite 100
Haddonfield, NJ 08033

Tax Parcel Number: 30-00-02462-05

**MORTGAGE**

THIS MORTGAGE is made the 28th day of December, 2022 by Joseph L. Fox and Christina O. Fox, husband and wife, with an address of 38 Harrison Drive, Newtown Square, Pennsylvania 19073 (collectively, "Mortgagor") and Trojan Partners LP, a Delaware limited partnership, with an address of 7120 East Kierland Boulevard, Unit 807, Scottsdale, AZ 85254, (the "Mortgagee").

THAT Mortgagor has executed and delivered to Mortgagee a Mortgage Note (the "Note") bearing a date of December 28, 2022, wherein Mortgagor promises to pay to Mortgagee the principal sum of Four Hundred Thousand Dollars ($400,000.00), lawful money of the United States of America, advanced or to be advanced by Mortgagee to Mortgagor with interest thereon at the rate and times, in the manner, and according to the terms and conditions specified in the Note, all of which are incorporated herein by reference.

In consideration of the indebtedness, and as security for payment to Mortgagee of the principal, with interest, and all other sums provided for in the Note and in this Mortgage, according to their respective terms and conditions, Mortgagor hereby grants and conveys to Mortgagee all the lot(s) of ground, situated at 38 Harrison Drive, Newtown Square, Pennsylvania 19073 as more specifically described in Exhibit "A" attached hereto and made a part hereof;

TOGETHER with all the buildings and improvements now or hereafter erected on said premises, and all easements, rights and appurtenances thereto belonging, and the rents, issues and profits which are hereby assigned to Mortgagee, with the right to collect the same, and all fixtures, machinery, equipment and appliances now or hereafter attached to said premises, or used in connection therewith, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing premises and property are herein referred to as the "Premises".

TO HAVE AND TO HOLD the Premises unto Mortgagee, its successors and assigns forever, in fee.

Mortgagor hereby assigns to Mortgagee all leases already in existence and to be created in the future, together with all rents due and to become due under existing or future leases.

1. **Underlying Obligation**. This Mortgage and the rights in the Premises hereby granted shall secure Mortgagor's obligation to pay or perform the following:

(a) A fixed or contingent obligation of Mortgagor, or any one or more of them, to Mortgagee evidenced by a certain written note, guaranty, instrument, agreement or other writing of even date with this Mortgage in the amount of Four Hundred Thousand Dollars ($400,000.00), including all interest at the rate specified in such instrument, (or, in the case of a guaranty, at the rate specified in the guaranteed instrument), or creating a liability, fixed or contingent, in such principal amount, together with any renewals, extensions or modifications thereof (herein called the "Obligation").

(b) All other obligations of Mortgagor, or any one or more of them, to Mortgagee, fixed or contingent, whether now or hereafter incurred or created pursuant to this Mortgage, the Obligation or otherwise, and whether or not in excess of the principal amount set forth above.

(c) All amounts expended by Mortgagee in the performance by it of any duty of Mortgagor contained in this Mortgage or the Obligation which Mortgagee may elect to expend on account of the failure of Mortgagor to perform the same, together with interest thereon and all costs, expenses and actual attorney's fees incurred in the collection of the sums secured hereby, and in the perfection or enforcement of the Mortgagee's rights hereunder and under the Obligation.

2. **Covenants**. Until the Obligation and all other sums secured by this Mortgage are paid in full, Mortgagor (and if more then one, jointly and severally) covenants and agrees with the Mortgagee as follows:

(a) All payments on the Obligation will be made when and where due, all sums now or hereafter payable under the terms of the Obligation or this Mortgage or secured hereby will be paid when and where due, and all of the agreements and covenants contained in the Obligation, this Mortgage and in other documents secured hereby shall be promptly performed and observed in full accordance with their terms.

(b) To pay at least thirty (30) days prior to the accrual of any interest or penalty thereon, all taxes, water and sewer rents, assessments and all other charges or claims which may be assessed or levied upon the Premises at any time (all herein called the "Claims") and to deliver to Mortgagee within fifteen (15) days after such payment evidence thereof satisfactory to Mortgagee. Mortgagee shall have the right to require that Mortgagor pay such Claims to Mortgagee monthly in advance.

(c) To maintain at all times with respect to the Premises insurance, against such hazards, in such amounts, and with insurers as are satisfactory to Mortgagee and with a standard mortgagee clause; and to pay as they shall become due all premiums for such insurance. Policies evidencing such insurance shall, at the option of Mortgagee, be deposited, premiums paid, with Mortgagee. In the event of any loss or damage to the Premises, Mortgagor will immediately notify Mortgagee thereof in writing and Mortgagee may file proof of loss if not filed promptly by Mortgagor. Mortgagor hereby authorizes and directs any insurance company concerned to pay directly to Mortgagee any proceeds (not in excess of the total amount due Mortgagee hereunder) which may be payable under such insurance, including return of unearned premiums, and Mortgagee at is option may apply such proceeds or any part thereof to the indebtedness secured hereby or to the repair and restoration of the Premises.

(d) To maintain the Premises in good condition, order and repair and to make restorations and replacements reasonably required by Mortgagee and not to make or permit to be made, any alterations, demolition, addition or improvements to the Premises without first obtaining the written consent of Mortgagee which consent Mortgagee reserves the right to refuse to grant; and to permit Mortgagee and its representatives to enter the Premises and inspect the same at all reasonable times.

(e) To pay when due all sums payable under, and to perform and observe all agreements contained in any mortgage or other lien which may have priority over the lien of this Mortgage, and upon request to deliver to Mortgagee promptly satisfactory evidence of such payment and performance.

(f) To execute and deliver to Mortgagee upon request such documents and statements as Mortgagee may require to perfect, protect or extend the lien or priority of this Mortgage on the Premises and to pay all costs of recording or filing such documents or statements in such public offices as Mortgagee may require.

(g) If any part of the Premises is condemned, all proceeds shall be applied first to pay the indebtedness secured hereby. No settlement for the damages sustained thereby shall be made by Mortgagor without Mortgagee's prior written approval thereof.

(h) Mortgagor shall comply with all laws, ordinances and regulations affecting the Premises.

(i) Mortgagor shall not incur any additional debt before this Note is paid in full, secured or unsecured.

(j) Mortgagor shall provide Lender with written notice within three (3) business days of receipt of any notice of any default or intent to foreclose from any lender.

3. **Title**. Mortgagor represents and warrants to Mortgagee that Mortgagor lawfully owns the Premises in fee simple and has the absolute right to mortgage, grant and covey the Premises to Mortgagee free of the interest of any other person or entities except for any interest presently of record.

4. **Environmental**. (a) As used in this Mortgage, the following terms shall have the following meanings:

(i) The term "Environmental Laws" means any and all applicable Federal, State and local environmental statutes, laws, ordinances, rules and regulations, whether now existing or hereafter enacted, together with all amendments, modifications, and supplements thereto, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §9601, as amended by the Superfund Amendments and Re-authorization Act of 1986 (Pub. L. No. 99-499, 100 Stat. 1613 (1986) (SARA) or 40 CFR Part 261, whichever is applicable), the Pennsylvania Solid Waste Management Act, 35 P.S. §6018.103 and/or 25 Pa. Code §§75.260 and 75.261 and the Hazardous Sites Cleanup Act, 35 P.S. §6020.101 et. seq. and the term "Hazardous Substance" means all contaminants, hazardous substances, pollutants, hazardous waste, residual waste, solid waste, or similar substances or wastes which may be the subject of any Environmental Laws.

(b) Mortgagor represents and warrants to Mortgagee that (i) the Premises and Mortgagor are in full compliance with the Environmental Laws; (ii) Mortgagor has no knowledge of or notice concerning any potential liability under, or any investigation or proceeding threatened or pending under the Environmental Laws arising from the ownership or operation, past or present, of the Premises; (iii) there are no underground or above ground storage tanks on the Premises that have been used for the storage of petroleum products or any Hazardous Substance nor to the best of Mortgagor's knowledge, have any such tanks been located on the Premises at any time; and (iv) there is no evidence of any release, discharge or pollution from any petroleum products or any Hazardous Substance on the Premises.

(c) Mortgagor covenants and agrees that (i) Mortgagor shall not, and shall not permit any other person to, locate, store, generate, manufacture, process, distribute, use, treat, transport, handle, dispose of, emit, discharge or release any Hazardous Substance on, from or with respect to the Premises (Mortgagor may use, store and dispose of cleaning materials in the ordinary course of Mortgagor's business in reasonable quantities and in compliance with Environmental Laws); (ii) Mortgagor shall immediately notify Mortgagee of any violation of or potential liability under the Environmental Laws; (iii) Mortgagor shall immediately comply with any order, action or demand of any governmental agency or legal or administrative agency having jurisdiction over the Premises to clean and remove any Hazardous Substance from the Premises and to pay for such clean up, removal and associated costs, fines and penalties; and (iv) Mortgagor shall otherwise comply with all Environmental Laws and laws relating to the storage, handling and disposing of petroleum products.

(d) At any time Mortgagee shall have the right, but not the obligation, to conduct or cause to be conducted by any other person designated by Mortgagee, an environmental audit or similar assessment concerning the Premises and its compliance with Environmental Laws and to ascertain the existence of Hazardous Substances on the Premises. Mortgagor shall pay all costs and expenses associated with such audit or assessment. Mortgagee and its designees are authorized to enter upon the Premises to perform such audit or assessment and to conduct all tests necessary including above and below ground tests. If such audit,

assessment or other inquiry reveals the existence of any Hazardous Substances or noncompliance with Environmental Laws, Mortgagee, at Mortgagor's expense, shall have the right, but not the obligation, to cause the Premises to be treated by persons designated by Mortgagee, as is necessary in Mortgagee's opinion, to cause the Premises to comply with Environmental Laws and to be free of Hazardous Substances. Any cost or expense arising from any audit, assessment of other inquiry and from any treatment not paid by Mortgagor may be paid by Mortgagee. Mortgagor will pay to Mortgagee immediately, and without demand, all sums of money advanced by Mortgagee pursuant to this paragraph together with interest on any such advance at the default rate, if any, specified in the Obligation, and all such sums and interest thereon shall be secured hereby.

(e) Mortgagor shall defend, indemnify, and hold harmless Mortgagee and its directors, officers, agents and employees, from any and all liabilities (including strict liability), actions, demands, penalties, losses, costs, or expenses (including without limitation attorneys' fees and expenses, and remedial costs), suits, costs of any settlement or judgment, and claims of any and every kind whatsoever which may now or in the future (whether before or after the satisfaction of this Mortgage) be paid, incurred, or suffered by or asserted against Mortgagee by any person or entity or governmental agency for, with respect to, or as a direct or indirect result of, the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission, or release from the Premises of any Hazardous Substances or arise out of or resulting from the environmental condition of the Premises or the violation of any Environmental Laws regardless of whether or not caused by or within the control of Mortgagor or Mortgagee. The representations, covenants, warranties, and indemnifications contained in this paragraph shall survive the satisfaction and payment in full of this Mortgage.

(f) Mortgagor represents and warrants to Mortgagee that no part of the Premises contains, is located in, or abuts a floodplain, navigable water or any other body of water, tideland, marshland, wetland or other area (collectively, "Protected Area") which is subject to a special state, federal or municipal regulation, control or protection; and covenants that Mortgagor shall comply with all laws, ordinances and regulations pertaining to Protected Areas, to the extent applicable to the Premises.

5. **Default.** The occurrence of any of the following events shall constitute a default hereunder:

(a) Failure to pay when due any of the sums required to be paid on account of the Obligation or under the terms of this Mortgage.

(b) The occurrences of any default under the Obligation or under any other agreement or document securing or executed in connection with the indebtedness evidenced by the Obligation (such other agreement or document herein called a "Collateral Agreement") or the failure of Mortgagor to observe, perform or comply with any other term, covenant or condition contained in the Obligation, this Mortgage, any Collateral Agreement or any other agreement of Mortgagor of any nature whatsoever with the Mortgagee.

(c) Any representation, warranty, financial statement or other information

made or furnished by Mortgagor or any one or more of them, to Mortgagee in compliance with or in connection with any obligation or indebtedness secured hereby, shall prove to have been false or erroneous in any material respect when made or furnished.

(d) Mortgagor shall become insolvent or make an assignment for the benefit of creditors or if any petition shall be filed by or against Mortgagor under any bankruptcy or insolvency law.

(e) Commencement of any action or proceeding to foreclose or issue execution on any lien upon the Mortgaged Property or any part thereof other than the lien of this Mortgage.

(f) Mortgage shall convey or in any other manner cause or permit the change of ownership of, or title to, all or any portion of the Premises, or of any interest therein or in any partnership or corporation having any having an interest in the Premises. The transfer by any partner or shareholder of any of its interest in Mortgagor shall constitute a transfer of any interest in the Premises.

(g) The entry of any judgment against Mortgagor which remains unsatisfied for 15 days or the issuance of any tax lien against any property of material value in which Mortgagor has an interest.

(h) The dissolution, merger, change in control (as control is defined in Rule 12b-2 under the Securities Exchange Act of 1934), consolidation or reorganization of Mortgagor if Mortgagor is a corporation or partnership or the sale or transfer of any substantial portion of Mortgagor's assets, or if any agreement for such dissolution, merger or consolidation, sale or transfer is entered into without the prior written consent of the Mortgagee.

(i) The recording of any mortgage, judgment or other lien against the Premises.

(j) The death of either Mortgagor if Mortgagor is a natural person.

(k) Mortgagor incurs any additional debt before this Note is paid in full, secured or unsecured.

(l) Mortgagor fails to satisfy or pay any existing debt or obligations when due.

(l) Mortgagor fails to provide Mortgagee with written notice within three (3) business days of receipt of any notice of any default or intent to foreclose from any lender

6. **Remedies.** The unpaid principal indebtedness of the Obligation and all other sums secured by this Mortgage, together with accrued interest thereon, shall become due and payable immediately at the option of Mortgagee, without notice or demand, upon the occurrence of a default specified in paragraph 5 and thereupon Mortgagee may immediately exercise its right to:

(a) Institute an appropriate action(s) or proceeding(s) to foreclose this Mortgage and may proceed therein to judgment and execution of the entire amount secured hereby.

(b) Become a Mortgagee in possession of the Premises, with or without legal action, and exercise all rights as such;

(c) Take such other action at law or in equity for the enforcement hereof and recovery of sums secured hereby.

(d) Mortgagee may perform any obligation which Mortgagor has failed to fulfill and may take all steps Mortgagee deems advisable to perform or fulfill such obligation or Mortgagor.

The remedies of Mortgagee as provided herein, or in the Obligation, shall be cumulative and may be pursued singly, successively, or together against Mortgagor or the Premises, or all, at the sole discretion of Mortgagee. The waiver of any default or failure to enforce any right or to pursue any remedy at any time, shall not be a waiver of any subsequent default or preclude such enforcement or pursuit at another time.

**FOR THE PURPOSE OF OBTAINING POSSESSION OF THE PREMISES IN THE EVENT OF ANY DEFAULT HEREUNDER OR UNDER THE NOTE, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, TO APPEAR FOR AND CONFESS JUDGMENT IN EJECTMENT AGAINST MORTGAGOR FOR POSSESSION OF THE PREMISES AND TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, IN FAVOR OF MORTGAGEE, FOR RECOVERY BY MORTGAGEE OF POSSESSION THEREOF, FOR WHICH THIS MORTGAGE, OR A COPY THEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PREMISES, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE PREMISES SHALL REMAIN IN OR BE RESTORED TO MORTGAGOR, MORTGAGEE SHALL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS AS ABOVE PROVIDED TO RECOVER POSSESSION OF THE PREMISES. MORTGAGEE MAY CONFESS JUDGMENT IN EJECTMENT THEREIN BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE ITS MORTGAGE OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT ON THE MORTGAGE OR ON THE NOTE, OR AFTER A SHERIFFS SALE OF THE PREMISES IN WHICH MORTGAGEE IS THE SUCCESSFUL BIDDER. THE**

**AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR OBTAINING POSSESSION IS AN ESSENTIAL PART OF THE ENFORCEMENT OF THE MORTGAGE AND THE NOTE, AND SHALL SURVIVE ANY EXECUTION SALE TO MORTGAGEE.**

**MORTGAGOR ACKNOWLEDGES AND AGREES THAT (A) THE FOREGOING WARRANT OF ATTORNEY TO CONFESS JUDGMENT IS BEING EXECUTED IN CONNECTION WITH A COMMERCIAL TRANSACTION, (B) MORTGAGEE'S CONFESSION OF JUDGMENT FOLLOWING AN EVENT OF DEFAULT AND IN ACCORDANCE WITH THE FOREGOING WARRANT OF ATTORNEY WOULD BE IN ACCORDANCE WITH MORTGAGOR'S REASONABLE EXPECTATIONS, (C) IN VIEW OF THE COMMERCIAL NATURE OF THE RELATIONSHIP BETWEEN THE PARTIES HERETO THERE IS NO EXPECTATION THAT MORTGAGEE SHALL HAVE ANY DUTY UNDER ANY PROVISION OF § 5601.3 OF CHAPTER 56 OF THE PENNSYLVANIA PROBATE, ESTATES AND FIDUCIARIES CODE (20 PA.C.S.A. § 5601.3) TO ACT IN THE BEST INTEREST OF ANY PRINCIPAL THEREUNDER AND IT IS AGREED THAT MORTGAGEE SHALL HAVE NO SUCH DUTY, AND (D) MORTGAGEE DOES NOT AND, IN REGARD TO THE LOAN OR THE LOAN DOCUMENTS, SHALL NOT HAVE ANY OF THE DUTIES TO MORTGAGOR SET FORTH IN 20 PA.C.S.A. § 5601.3(B), AND THE SAME ARE HEREBY IRREVOCABLY WAIVED BY MORTGAGOR.**

7. **Miscellaneous**.

(a) If Mortgagor shall observe all the covenants and agreements on Mortgagor's part contained in the Obligation and this Mortgage, then this Mortgage shall terminate.

(b) This Mortgage shall inure to the benefit of Mortgagee, its successors and assigns.

(c) Any provision of this Mortgage which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(d) This Mortgage cannot be changed or amended except by an agreement in writing signed by the party against whom enforcement of the change is sought.

(e) The captions preceding the text of the paragraphs or subparagraphs of this Mortgage are inserted only for convenience of reference and shall not constitute a part of this Mortgage, nor shall they in any way affect its meaning, construction or effect.

(f) Any provision of this Mortgage which is prohibited or unenforceable shall

be ineffective to the extent of such prohibition or unenforceability but shall not invalidate or render unenforceable any other provision in this document and the remaining provisions shall stay in full force and effect.

(g) It is the intention of the Mortgagee and Mortgagor that this Mortgage shall not merge into any judgment in mortgage foreclosure or other judgment entered pursuant to this Mortgage or the Obligation and that all rights, remedies, covenants, obligations, and agreements in this Mortgage shall survive the entry of such judgment or judgments.

8. **JURISDICTION AND VENUE.** IN ANY LEGAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER ARISING OUT OF OR RELATED TO THIS MORTGAGE OR THE RELATIONSHIP ESTABLISHED HEREUNDER, EACH UNDERSIGNED PARTY HEREBY IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN OR SERVICING DELAWARE COUNTY AND AGREES NOT TO RAISE ANY OBJECTION TO SUCH JURISDICTION OR TO THE LAYING OR MAINTAINING OF THE VENUE OF ANY SUCH PROCEEDING IN SUCH COUNTY, MORTGAGOR AGREES THAT SERVICE OF PROCESS IN ANY SUCH PROCEEDING MAY BE DULY EFFECTED UPON IT BY MAILING A COPY THEREOF, BY REGISTERED MAIL, POSTAGE PREPAID, TO MORTGAGOR.

9. **WAIVER OF JURY TRIAL.** EACH UNDERSIGNED PARTY HEREBY WAIVES, AND MORTGAGEE BY ITS ACCEPTANCE HEREOF THEREBY WAIVES, TRIAL BY JURY IN ANY LEGAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER (WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE) IN ANY WAY ARISING OUT OF OR RELATIED TO THIS MORTGAGE OR THE RELATIONSHIP ESTABLISHED HEREUNDER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR MORTGAGEE TO ENTER INTO, ACCEPT OR RELY UPON THIS MORTGAGE.

SIGNATURES ON FOLLOWING PAGE

IN WITNESS WHEREOF, Mortgagor intending to be legally bound hereby, has caused this Mortgage to be duly executed and delivered the day and year first above written.

WITNESS-ATTEST:

_______________________ [signature] Joseph L. Fox

WITNESS-ATTEST:

_______________________ [signature] Christina O. Fox

COMMONWEALTH OF PENNSYLVANIA :
: §
COUNTY OF Montgomery :

Be it remembered that on this 28th day of December, 2022, before me, the subscriber, a Notary Public, personally appeared Joseph L. Fox who I am satisfied is/are the person (s) named in and who executed the within instrument and he did acknowledge that she signed, sealed and delivered the same as his act and deed for the uses and purposes therein expressed. And said Joseph L. Fox did further certify and acknowledge that they received a true, correct and complete copy of the within instrument and of all of the other documents referred to therein.

Witnesseth my hand and seal.

Commonwealth of Pennsylvania - Notary Seal
Rafeek T. McEachin, Notary Public
Montgomery County
My commission expires May 2, 2026
Commission number 1321964
Member, Pennsylvania Association of Notaries

Notary Public
My Commission Expires: May 2nd, 2026

COMMONWEALTH OF PENNSYLVANIA :
: §
COUNTY OF Montgomery :

Be it remembered that on this 28th day of December, 2022, before me, the subscriber, a Notary Public, personally appeared Christina O. Fox who I am satisfied is/are the person (s) named in and who executed the within instrument and she did acknowledge that she signed, sealed and delivered the same as her act and deed for the uses and purposes therein expressed. And said Christina O. Fox did further certify and acknowledge that they received a true, correct and complete copy of the within instrument and of all of the other documents referred to therein.

Witnesseth my hand and seal.

Commonwealth of Pennsylvania - Notary Seal
Rafeek T. McEachin, Notary Public
Montgomery County
My commission expires May 2, 2026
Commission number 1321964
Member, Pennsylvania Association of Notaries

Notary Public
My Commission Expires: May 2nd, 2026

# EXHIBIT A

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, Situate in the Township of Newtown, County of Delaware and Commonwealth of Pennsylvania and described according to a Final Subdivision Plan of the Harrison Estate made by Durkin Associates, Inc., dated January 4, 1996 last revised April 4, 1997 and recorded in Plan Volume 19 page 272, as follows, to wit:

BEGINNING at a point on the Southeasterly side of Harrison Drive, said point being a corner of Lot #53 on said plan; thence extending along said Lot #53 the three following courses and distances: (1) South 36 degrees 48 minutes 5 seconds East 328.40 feet to a point; (2) South 76 degrees 51 minutes 14 seconds East 293.13 feet to a point; and (3) South 89 degrees 8 minutes 4 seconds East 295.57 feet to a point of curve on the Northwesterly side of St. Davids Road; thence extending on the arc of a circle curving to the left having a radius of 400 feet the arc distance of 168.93 feet to a point of tangent; thence extending South 28 degrees 52 minutes 36 seconds West 571.97 feet to a point a corner of Basin #3 on said plan; thence extending along said Basin #3 the four following courses and distances: (1) North 20 degrees 8 minutes 49 seconds West 122 feet to a point; (2) North 61 degrees 7 minutes 24 seconds West 137.24 feet to a point; (3) South 31 degrees 18 minutes 30 seconds West 156.23 feet to a point; and (4) South 53 degrees 36 minutes 9 seconds West 80.13 feet to a point in line of open space; thence extending along same North 61 degrees 33 minutes 6 seconds West 523.88 feet to a point, a corner of Lot #48 on said plan; thence extending along said Lot #48 North 50 degrees 57 minutes 31 seconds West 75.93 feet to a point, a corner of Lot #49 on said plan; thence extending along Lots #49 and #50 North 24 degrees 9 minutes 19 seconds East 275.06 feet to a corner of Lot #51 on said plan; thence extending along Lots #51 and #52 the two following courses and distances: (1) North 60 degrees 31 minutes 25 seconds East 463.90 feet to a point; (2) North 36 degrees 48 minutes 5 seconds West 235.06 feet to a point of curve on the Southeasterly side of Harrison Drive; thence extending on the arc of a circle curving to the right having a radius of 590 feet the arc distance of 25.19 feet to the first mentioned point and place of beginning.

BEING Lot #54 on said Plan.